# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | §<br>§<br>§ | |
| v. | §<br>§ | EP-19-CR-3342-PRM |
| MARIA LUISA MARISCAL AVILA,<br>    Defendant. | §<br>§<br>§ | |

## MEMORANDUM OPINION AND
## ORDER GRANTING MOTION TO SUPPRESS

On this day, the Court considered Defendant Maria Luisa Mariscal Avila's [hereinafter "Defendant"] "Motion to Suppress Statements" (ECF No. 22) [hereinafter "Motion"], filed on November 25, 2019, and the Government's "Response to Defendant's Motion to Suppress and Brief in Support" (ECF No. 24) [hereinafter "Response"], filed on November 27, 2019, in the above-captioned cause. Defendant asserts that her statements to law enforcement should be suppressed because law enforcement questioned her after she invoked her right to counsel, and in the alternative, that she did not provide a knowing and voluntary waiver of her *Miranda* rights. Mot. 4. After due consideration, the Court is of the opinion that Defendant's Motion should be granted for the reasons set forth herein.

# I. FINDINGS OF FACT

Both Defendant's Motion and Government's Response are based on the same underlying facts presented in the Government's Criminal Complaint, Defendant's signed *Miranda* waiver, and a videotape and transcript of Defendant's custodial interrogation. Accordingly, the Court makes findings of fact based on this undisputed record relied upon by both parties.

## A. Initial Encounter With Law Enforcement

At approximately 12:40 p.m. on September 25, 2019, Customs and Border Protection [hereinafter "CBP"] officers apprehended Defendant, the driver and single occupant in a white Nissan Versa in the Stanton Dedicated Commuter Lane Port of Entry in El Paso, Texas. Crim. Compl. 2, Sept. 26, 2019, ECF No. 1. The officers referred Defendant's vehicle for secondary inspection. *Id.*

At secondary inspection, a canine alerted to the presence of a narcotic odor at the dashboard and glove compartment of Defendant's vehicle. *Id.* CBP officers scanned Defendant's vehicle with a Z-Portal X-ray machine, and detected anomalies in the vehicle's dashboard. *Id.* The officers then searched the vehicle and removed ten bundles from a

compartment in the car's dashboard. *Id.* The bundles weighed approximately 10.7 kilograms and tested positive for cocaine. *Id.*

After discovering the bundles, CBP officers escorted Defendant to passport control secondary in hand constraints. Mot. 2; Resp. 2. More than two hours after Defendant first arrived at the Port of Entry, Homeland Security Investigations Special Agents Fernando Juarez and Michael Medina [hereinafter "Agent Juarez" and "Agent Medina"] escorted Defendant to an interview room. Crim. Compl. 2. A third agent, CBP Officer Jose Galindo, was also present in the room for the subsequent interrogation. Mot. 2; Resp. 2.

## B.    The Custodial Interrogation[1]

Agent Juarez began to interrogate Defendant at approximately 2:45 p.m. in the Spanish language.[2] Mot. Ex. A, at 2:45:18. He began the interrogation as follows:

> AGENT JUAREZ: Let me inform you of your rights. Before I ask any questions, it is my duty to inform you of your rights.
>
> DEFENDANT: Yes.

---

[1] The Government concedes the encounter was a custodial interrogation. Resp. 2.

[2] The Court reviewed the Spanish-language videotape of the interrogation as well as a certified English-language translation provided by the parties. *See* Mot. Ex. A, B.

3

AGENT JUAREZ: You have the right to remain silent. Anything you say may be used against you in court or on another procedure. You have the right to consult with an attorney before making a declaration or answer any question. You have the right to have your attorney present while we interrogate you.

DEFENDANT: And the attorney from where?

AGENT JUAREZ: Today you are not going to be assigned an attorney, that will be assigned by the judge tomorrow, okay. If you cannot pay for an attorney on your own, an attorney will be assigned before any questions are asked if you so wish. If you decide to answer questions at this moment, you maintain the right to refuse to answer any question, in any moment or to stop the interrogation with the purpose of consulting an attorney. Did you understand that? If you want, if you wish to read it, you can take it.

DEFENDANT: No, I understood perfectly.

AGENT JUAREZ: Okay, you have no questions about this? You did understand?

DEFENDANT: Well, just a lawyer because I do not have a lawyer . . . (interruption by agent)

AGENT JUAREZ: An attorney, look! I do not have any way to assign you an attorney. Nor authorization to give you an attorney. The only person that can assign you an attorney if you cannot pay for your own attorney.

DEFENDANT: No, I have no money therefore (interruption by agent)

AGENT JUAREZ: The Judge will make that determination tomorrow. Tomorrow he will talk, you will be interviewed and he will see that report; and he will declare if they will, the government will assign or not an attorney. If he sees you have money, then you will say you take care of the attorney.

DEFENDANT: No, no (interruption by agent)

AGENT JUAREZ: But here in this country we all have the right to an attorney.

DEFENDANT: Okay.

AGENT JUAREZ: Okay, right now I want to interview you regarding the contraband that was found in your car. So, at what time did you cross this morning?

DEFENDANT: Oh boy! I do not know the time.

Mot. Ex. A, at 2:45:18–48:18; Mot. Ex. B, at 1–5.

During the subsequent interrogation, Agent Juarez questioned Defendant for an hour and a half. Mot. 3; Resp. 3. Movant made statements about how (1) she purchased goods in the United States and transported them back to Juarez on behalf of Antonio Rubio, an individual in Juarez; (2) Antonio Rubio helped Defendant purchase the white Nissan Versa vehicle; and (3) Defendant suspected Antonio Rubio might be a drug trafficker. Mot. Ex. A, at 2:48:18–4:13:41; Mot. 3; Resp. 3.

The interrogation terminated at approximately 4:14 p.m. Mot. Ex. A, at 4:13:41. Defendant did not sign a *Miranda* waiver or any other form prior to or during the videotape of the interrogation. Mot. Ex. A, at 2:45:18–4:13:41. However, the Government has produced a *Miranda* waiver signed by Defendant during discovery. Mot. Ex. C. The

5

Government states that Defendant signed the *Miranda* waiver at the conclusion of the interrogation. Resp. 3.

### C. Procedural History

On October 16, 2019, a grand jury returned an indictment charging Defendant with 21 U.S.C. § 952(a), Importation of a Controlled Substance and 21 U.S.C. § 841(a)(1), Possession of a Controlled Substance with Intent to Distribute. Indictment, Oct. 16, 2019, ECF No. 12. On October 28, 2019, the Magistrate Judge accepted Defendant's waiver of a personal appearance at an arraignment and plea of not guilty. Order Accepting Waiver of Personal Appearance at Arraignment, Oct. 28, 2019, ECF No. 17. On November 25, 2019, Defendant filed her Motion, moving to suppress the statements she made to law enforcement during the interrogation on September 25, 2019. Mot. 4. On November 27, 2019, the Government filed its Response. Resp. 1.

## II. LEGAL STANDARD

The Fifth Amendment to the United States Constitution guarantees that no individual "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court "established that the prosecution may not use statements stemming from custodial interrogation of the defendant unless it

demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *United States v. Bennett*, 626 F.2d 1309, 1311 (5th Cir. 1980) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "The safeguards of *Miranda* . . . are well-established," *United States v. Payne*, 954 F.2d 199, 201 (4th Cir. 1992), and include "the now famous Miranda rights." *Bennett*, 626 F.2d at 1311.

Pursuant to *Miranda*, "[i]n order to use an in-custody statement against a defendant, the government must demonstrate that the defendant was warned of his right to remain silent and his right to consult with an attorney." *United States v. Anderson*, 755 F.3d 782, 790 (5th Cir. 2014) (citing *Miranda*, 384 U.S. at 471). When the accused "has invoked his right to have counsel present during custodial interrogation," they are "not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).

The accused may also waive effectuation of their *Miranda* rights "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. "[T]he State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168

(1986); *see also Miranda*, 384 U.S. at 475 ("[A] heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived . . . his right to retained or appointed counsel."). The Court must consider the "'totality of the circumstances surrounding the interrogation'" in order to "properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

## III. ANALYSIS

Defendant argues that the Court should suppress her statements to law enforcement because "she requested counsel," and alternatively, that she did not make a "knowing and voluntary" waiver of her *Miranda* rights. Mot. 4. After due consideration, the Court is of the opinion that (1) Defendant failed to properly invoke her right to counsel, but (2) Defendant did not make a knowing and intelligent waiver of her *Miranda* rights. Accordingly, the Court concludes that Defendant's statements to law enforcement should be suppressed.

### A.  Invoking the Right to Counsel

Defendant claims she "unambiguously indicated her desire to have an attorney present during the custodial interrogation." Mot. 5. However, the Court finds that Defendant did not unambiguously invoke

her right to counsel. Therefore, the Court will not suppress Defendant's statements to law enforcement on these grounds.

In order to invoke the right to counsel during a custodial interrogation, the accused must make a statement that can "reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). The invocation of the right to counsel cannot be "ambiguous or equivocal." *Davis v. United States*, 512 U.S. 452, 459 (1994); *see Soffar v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002) ("An unambiguous statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney is required under this stringent standard.") (quotations omitted). If "a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," law enforcement need not cease questioning. *Davis*, 512 U.S. at 459.

The Court is of the opinion that the first time Defendant mentioned an attorney during the custodial interrogation, Defendant asked a question about, rather than invoked, the right to counsel. Immediately after Agent Juarez stated that Defendant had the right to consult with an attorney, Defendant asked, "And the attorney from where?" Mot. Ex. B, at 2. From an objective standpoint, Defendant asked Agent Juarez to

9

explain how she could obtain an attorney, and Agent Juarez subsequently informed Defendant about this process. A reasonable officer would not necessarily construe a suspect asking about how to obtain an attorney as requesting the assistance of an attorney. Accordingly, the Court concludes that Defendant's initial question about an attorney did not invoke the right to counsel.

The Court also concludes that the second time Defendant mentioned an attorney during the custodial interrogation, Defendant made an ambiguous statement which again did not invoke the right to counsel. In response to Agent Juarez asking Defendant, "You did understand [the *Miranda* rights]?" Defendant answered, "Well, just a lawyer because I do not have a lawyer . . . ." Mot. Ex. B, at 4. Here, a reasonable officer might construe Defendant's statement in multiple ways. In the context of Agent Juarez's previous question about whether Defendant understood her *Miranda* rights, Defendant could have been asking for more information about her right to counsel. Alternatively, Defendant could have been expressing a desire to obtain counsel before further questioning. Thus, because Defendant's statement was ambiguous, Defendant did not properly invoke the right to counsel. *See Davis*, 512 U.S. at 462 (declining to overrule the finding that "[m]aybe I should talk to a lawyer" was not an

10

unambiguous request for counsel).

The Court notes that in light of Defendant's second ambiguous statement, Agent Juarez could have sought to clarify whether Defendant wanted to speak to counsel. However, *Miranda* does not require law enforcement to ask clarifying questions. *See Davis*, 512 U.S. at 461 ("[We] decline to adopt a rule requiring officers to ask clarifying questions."). The Court is also mindful that while Defendant made a second ambiguous statement about counsel, Agent Juarez interrupted Defendant. Arguably, Agent Juarez's interrogation conduct burdened the requirements of *Miranda* because it possibly interfered with Defendant's ability to invoke the right to counsel and "cut off questioning." *Miranda*, 384 U.S. at 474.

However, Defendant did not unequivocally invoke her right to counsel during the custodial interrogation at any time. Accordingly, the Court will not suppress Defendant's statements based upon Defendant's invocation of her right to counsel.

## B. Waiving the Right to Counsel

Defendant also moves to suppress her statements to law enforcement because "the waiver of her *Miranda* rights was not knowing and voluntary." Mot. 6. Thus, the Court is required to determine whether Defendant expressly or impliedly waived her *Miranda* rights. For the

11

reasons stated below, the Court concludes that Defendant did not make a knowing and intelligent waiver based upon the circumstances of the interrogation, and that Defendant's statements to law enforcement during the custodial interrogation should be suppressed.

1.    Method of Waiver

The accused may waive her *Miranda* rights during a custodial interrogation through either an express or implied waiver.  An express waiver, such as "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel," operates as "strong proof of the validity of that waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).  A waiver may also be "implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) (quoting *Butler*, 441 U.S. at 373).

After reviewing the videotape and transcript of the interrogation, the Court concludes that Defendant did not make an express written or oral statement waiving her *Miranda* rights during the taped portion of the custodial interrogation.  The Government claims that Defendant signed a *Miranda* waiver form at the conclusion of the interrogation. Even accepting the Government's claim as true, an express waiver

following the custodial interrogation would not apply to Defendant's statements to law enforcement because Defendant executed the waiver after having provided responses to law enforcement's questions. Accordingly, the Court is of the opinion that Defendant did not expressly waive her *Miranda* rights.

In the absence of an express waiver, the Court assesses whether it can imply a waiver from Defendant's conduct during the interrogation. To show an implied waiver, the state cannot merely show that a *"Miranda* warning was given and the accused made an uncoerced statement." *Berghuis*, 560 U.S. at 384. Rather, "[t]he prosecution must make the additional showing that the accused understood these rights." *Id.*

Here, Agent Juarez read Defendant her *Miranda* rights before interrogating her about the contraband in her vehicle. Defendant then responded to Agent Juarez's inquiries. Thus, in order to assess whether Defendant made an implied waiver of her *Miranda* rights, the Court assesses whether Defendant made her statements to Agent Juarez voluntarily, and with a knowing and intelligent understanding of the *Miranda* rights she was forfeiting. *See Miranda*, 384 U.S. at 444 (holding that a waiver must be made "voluntarily, knowingly and intelligently.").

## 2. <u>Voluntary Waiver of the Right to Counsel</u>

Coercive conduct of law enforcement ordinarily determines whether the accused has made a voluntary waiver of their *Miranda* rights. *See United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (citing *Connelly*, 479 U.S. at 163–65) (discussing the voluntariness of a confession). Here, the Court finds that Agent Juarez did not engage in coercive conduct during the custodial interrogation which would render Defendant's statements involuntary. Accordingly, the Court concludes that Defendant voluntarily waived her *Miranda* rights by responding to Agent Juarez's inquiries.

Any waiver of *Miranda* rights, "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421 (citing *Fare*, 442 U.S. at 725). Involuntary statements must have "resulted from coercive police conduct," *Bell*, 367 F.3d at 461 (citation omitted), and "include an element of official overreaching." *United States v. Raymer*, 876 F.2d 383, 387 (5th Cir. 1989) (citation omitted). Physical and psychological coercion impact voluntariness, and may take the form of intimidation, threats, or promises. *United States v. McClure*, 786 F.2d 1286, 1288–1289 (5th Cir. 1986); *Fare*, 442 U.S. at 727. However, "[p]loys

to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

Here, the circumstances of law enforcement's apprehension and detention of Defendant did not amount to coercive conduct. At no time did law enforcement physically harm or threaten Defendant. The Court is also of the opinion that any discomfort experienced by Defendant due to her hand restraints and the period of her detention was not coercive. *See United States v. Gonzales-Gomez*, 703 F. App'x 335, 338 (5th Cir. 2017) (holding that an "ordeal of forty or forty-five minutes in the hot, humid Texas air" was insufficient to show coercion).

Furthermore, Agent Juarez's interrogation techniques do not meet the standard for coercive conduct. It is not disputed that Agent Juarez interrupted Defendant during the interrogation and stated that Defendant would only have access to an attorney the following day. While these tactics may arguably qualify as trickery or deceit, they did not impact Defendant's free and rational choice to respond to Agent Juarez's questions. *See Moran*, 475 U.S. at 421 (finding that withholding information about call from attorney did not render waiver involuntary). Thus, the Court concludes that Agent Juarez's interrogation tactics did

15

not impact the voluntariness of Defendant's statements.

Because the circumstances of the interrogation and Agent Juarez's interrogation tactics were not coercive, the Court concludes that Defendant's statements during the interrogation were voluntary.

### 3. Knowing and Intelligent Waiver of the Right to Counsel

It is abundantly clear that Defendant's questions during the custodial interrogation related to her right to counsel. Her consistent and persistent inquiries about this right, even after stating that she "understood perfectly," clearly suggest her confusion and lack of understanding regarding this right. Mot. Ex. B, at 3. The Court thus concludes that Defendant made law enforcement aware that she misunderstood her right to counsel. Agent Juarez's continued questioning and interruption during the interrogation did not address Defendant's confusion, but further undermined Defendant's understanding of her right to counsel. Thus, the Court concludes that the Government fails to show by a preponderance of the evidence that Defendant knowingly and intelligently waived her *Miranda* rights. Accordingly, the Court further concludes that Defendant's statements should be suppressed.

The accused must make a waiver of their *Miranda* rights "with a full awareness of both the nature of the right being abandoned and the

consequences of the decision to abandon it." *Moran*, 475 U.S. 412, 421 (1986). While *Miranda* requires no "formalistic waiver procedure," providing incorrect or misleading *Miranda* warnings may render the accused's waiver invalid. *Berghuis*, 560 U.S. at 385. For example, "reference to appointed counsel . . . linked to a future point in time after police interrogation" provides an inadequate *Miranda* warning. *California v. Prysock*, 453 U.S. 355, 360 (1981) (referencing *People v. Bolinski*, 260 Cal. App. 2d 705, 718, 723 (Ct. App. 1968); *United States v. Garcia*, 431 F.2d 134, 134 (9th Cir. 1970)). "[M]isleading and confusing" statements about *Miranda* warnings also prevent the accused from "knowingly and intelligently" waiving their Fifth Amendment rights. *United States v. Dohm*, 618 F.2d 1169, 1175 (5th Cir. 1980).

The Fifth Circuit has held that trickery or deceit during an interrogation renders a *Miranda* waiver invalid when these tactics impair the accused's understanding of their *Miranda* rights. "Neither mere emotionalism and confusion, nor mere trickery will alone necessarily invalidate a confession." *Hawkins v. Lynaugh*, 844 F.2d 1132, 1140 (5th Cir. 1988) (quotations omitted). Rather, "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of

17

abandoning them.'" *Soffar*, 300 F.3d at 596 (quoting *Moran*, 475 U.S. at 424).

First, the Court is of the opinion that Defendant objectively indicated she did not understand the nature of her right to counsel during the custodial interrogation. After Agent Juarez administered a complete set of *Miranda* warnings, Defendant replied, "I understood perfectly." Mot. Ex. B, at 3. But Agent Juarez again asked Defendant if she understood her *Miranda* rights, to which Defendant replied, "Well, just a lawyer because I do not have a lawyer . . . ." *Id.* at 4. Notwithstanding Defendant's claim of understanding, Defendant's continued statements relating to counsel objectively indicated that she was confused and did not understand the meaning and scope of her right to counsel. Whereas in an implied waiver case such as *Berghuis* the Court implied a *Miranda* waiver only when the accused spoke to law enforcement after reading and understanding the *Miranda* warnings, here Defendant affirmatively indicated she did not understand her rights. *Berghuis*, 560 U.S. at 385. Accordingly, the Court determines that Defendant's statements during the interrogation indicated that she could not make a knowing and intelligent waiver of her *Miranda* rights.

In response to Defendant's statements, Agent Juarez then provided

18

arguably misleading responses about the right to counsel, further preventing Defendant from making a knowing and intelligent waiver of her *Miranda* rights. After Defendant indicated she misunderstood the right to counsel, Agent Juarez represented that Defendant could obtain an attorney "tomorrow." Mot. Ex. B, at 4. Agent Juarez subsequently proceeded to interrogate Defendant. Thus, Agent Juarez essentially indicated that Defendant would not be entitled to counsel until after the interrogation, which misrepresented the nature of the right to counsel. *See Prysock*, 453 U.S. at 360 (referencing cases where accused would receive counsel if charged, or when first appearing in court). Thus, Agent Juarez's misrepresentation further undermined Defendant's clear misunderstanding of the right to counsel, weighing against Defendant's ability to make a knowing and intelligent *Miranda* waiver. *See Dohm*, 618 F.2d at 1175 (disapproving of Magistrate's "misleading and confusing" statements); see *Johnson v. Laxalt*, 624 F. App'x 492, 497 (9th Cir. 2015) (finding an invalid waiver where "response did not resolve [Defendant's] lack of comprehension").

Whether intended or not, Agent Juarez also prevented (or possibly discouraged) Defendant from asking clarifying questions about the right to counsel. The record clearly establishes that Agent Juarez interrupted

Defendant three times while she attempted to speak, after Defendant indicated she did not understand the right to counsel. The Court finds that Agent Juarez's conduct prevented Defendant from asking additional clarifying questions about the right to counsel. Accordingly, the Court considers Agent Juarez's conduct the type of "trickery or deceit" which "deprive[d] the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Soffar*, 300 F.3d at 596 (quoting *Moran*, 475 U.S. at 424). Without understanding the nature of her right to counsel, and unable to ask additional questions about that right, Defendant could not and did not knowingly and intelligently waive her *Miranda* rights.

Finally, the Court is of the opinion that the case at bar is distinguishable from related cases where trickery and deceit did not invalidate the *Miranda* waiver of the accused. In *Soffar*, an officer erroneously informed the accused that obtaining a court-appointed attorney could take between one day and one month. *Soffar*, 300 F.3d at 591. However, the Fifth Circuit held that the accused understood and validly waived his *Miranda* rights because he "was given at least four *Miranda* warnings," and affirmatively "stated that he understood his rights." *Id.* at 592. Similarly, in *De La Rosa v. State of Texas*, an officer

20

stated to the accused that obtaining a court-appointed attorney "would take some time," erroneously placing the right to counsel after the interrogation. *De La Rosa v. State of Tex.*, 743 F.2d 299, 302 (5th Cir. 1984). Nevertheless, the Fifth Circuit held that the accused validly waived his *Miranda* rights because officers advised him of his complete *Miranda* rights four times and reiterated that he had "a right to have a lawyer present to advise [him] before and during any questioning." *Id.*

Like the officers in *De La Rosa* and *Soffar* who made misleading statements placing the right to counsel after an interrogation, here too Agent Juarez placed Defendant's right to counsel at a later date. But unlike in *Soffar* and *De La Rosa* where four complete *Miranda* warnings compensated for law enforcement's misleading statements, here Defendant only received one complete set of *Miranda* warnings. *See id.*; *Soffar*, 300 F.3d at 592. Moreover, Defendant objectively indicated that she did not understand her right to counsel after receiving her *Miranda* warning, whereas the accused in *De La Rosa* and *Soffar* made no similar representations. *See id.* at 591–592; *De La Rosa*, 743 F.2d at 301–302. Finally, Agent Juarez interrupted Defendants' repeated attempts to ask clarifying questions about the right to counsel, whereas law enforcement in *De La Rosa* and *Soffar* did not engage in similar conduct and actively

21

prevent the accused from speaking. *See id.*; *Soffar*, 300 F.3d at 591–592.
Accordingly, the Court determines that Agent Juarez's conduct deprived
Defendant of the ability to understand the nature of her *Miranda* rights,
and that Defendant's statements should be suppressed.

## C. Evidentiary Hearing

Defendant "requests an evidentiary hearing on this motion to
resolve factual disputes." Mot. 9. However, the Court is of the opinion
that no evidentiary hearing is required in light of the undisputed factual
record presented by the parties.

"[A]n evidentiary hearing is required on a motion to suppress only
when necessary to receive evidence on an issue of fact." *United States v.
Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (citation omitted).
Evidentiary hearings on motions to suppress are "designed for the
presentation of evidence in support of factual allegations which, if proven,
would justify the relief sought." *Id.* at 738.

Here, the *Miranda* issues raised by Defendant concern Defendant's
custodial interrogation. Neither party disputes the factual record
concerning the custodial interrogation, established in the Government's
Criminal Complaint, Defendant's signed *Miranda* waiver, and the
videotape and transcript. The parties also do not raise any factual

disputes necessary to resolve the motion. Accordingly, the Court is of the opinion that an evidentiary hearing is not warranted.

## IV. CONCLUSION

In sum, the Court determines that the suppression of evidence based on the conduct of law enforcement is appropriate. Although Defendant did not invoke the right to counsel and voluntarily engaged in conduct that the Government claims constitutes a waiver of *Miranda* rights, the Government fails to establish by a preponderance of the evidence that Defendant made a knowing and intelligent waiver of her *Miranda* rights.

Accordingly, **IT IS ORDERED** that Defendant Maria Luisa Mariscal Avila's "Motion to Suppress Statements" (ECF No. 22) is **GRANTED**.

SIGNED this _5th_ day of **February, 2020**.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE